JEDEDIAH WAKEFIELD (CSB No. 178058)
jwakefield@fenwick.com
TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
MOLLY R. MELCHER (CSB No. 272950)
mmelcher@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA  94104
Telephone:     415.875.2300
Facsimile:     415.281.1350

BRIAN D. BUCKLEY (admitted *pro hac vice*)
bbuckley@fenwick.com
Y. MONICA CHAN (admitted *pro hac vice*)
mchan@fenwick.com
FENWICK & WEST LLP
401 Union Street, 5th Floor
Seattle, WA  98101
Telephone:     206.389.4510
Facsimile:     206.389.4511

Attorneys for Defendant Adobe Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| VIKRAM SINGH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ADOBE INC.,<br><br>Defendant. | Case No.: 3:24-cv-03980-JSC<br><br>**ADOBE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:      February 13, 2025<br>Time:      10:00 a.m.<br>Dept:      Courtroom 8—19th Floor<br>Judge:     Hon. Jacqueline Scott Corley |

1

## TABLE OF CONTENTS

2

**Page(s)**

3   NOTICE OF MOTION .................................................................................................... 1

4   MEMORANDUM OF POINTS AND AUTHORITIES ................................................... 2

5   I.    INTRODUCTION ................................................................................................... 2

6   II.   STATEMENT OF FACTS ...................................................................................... 3

7         A.   Adobe And The Adobe Subscriptions ......................................................... 3

8         B.   Plaintiff And His Claims ............................................................................. 4

9         C.   Adobe's Automatic Renewal Disclosures ................................................... 5

10        D.   Adobe's Acknowledgement Email .............................................................. 7

11        E.   Cancellation ................................................................................................. 8

12  III.  STATEMENT OF THE ISSUES TO BE DECIDED ............................................. 8

13  IV.   ANALYSIS ............................................................................................................ 8

14        A.   Plaintiff Lacks Article III Standing To Pursue Claims For Unpurchased
               Subscriptions And Straight-To-Paid Subscriptions. ................................... 9
15
          B.   Plaintiff Fails To State Any Viable Claims. ............................................. 11
16
               1.   Plaintiff Pleads No Viable UCL, CLRA, Or FAL Claims. ................ 12
17
                    a.   Plaintiff Lacks Statutory Standing. ......................................... 12
18
                    b.   Plaintiff Fails To Allege Any Predicate Violation Of The
19                       ARL. ........................................................................................ 14

20                  c.   Plaintiff's UCL, CLRA, And FAL Claims Independently
                         Fail. .......................................................................................... 22
21
               2.   Plaintiff's Remaining Common-Law Claims Also Fail. .................... 24
22
          C.   Amendment Would Be Futile. ................................................................... 25
23
      V.  CONCLUSION .................................................................................................... 25
24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page(s)

3

Cases

4    *Arnold v. Hearst Magazine Media, Inc.*,
     No. 19-cv-1969-WQH-MDD, 2020 WL 3469367 (S.D. Cal. June 25, 2020) ....................... 22

5
     *Ashcroft v. Iqbal*,
6    556 U.S. 662 (2009) .................................................................................................. 11, 21

7    *Bell Atl. Corp. v. Twombly*,
     550 U.S. 544 (2007) ...................................................................................................... 9, 23

8
     *Charbonnet v. Omni Hotels & Resorts*,
9    No. 20-cv-01777-CAB-DEB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020)....................... 14

10   *Debono v. Cerebral Inc.*,
     No. 22-cv-03378, 2023 WL 300141 (N.D. Cal. Jan. 18, 2023) ................................... 24, 25

11
     *Doe v. Epic Games, Inc.*,
12   435 F. Supp. 3d 1024 (N.D. Cal. 2020) .......................................................................... 24

13   *Dohrmann v. Intuit, Inc.*,
     823 F. App'x 482 (9th Cir. 2020) ............................................................................... 19, 20

14
     *Freeman v. Time, Inc.*,
15   68 F.3d 285 (9th Cir. 1995) ............................................................................................. 17

16   *Gershfeld v. TeamViewer US, Inc.*,
     No. 21-55753, 2023 WL 334015 (9th Cir. Jan. 20, 2023) ............................................... 4

17
     *Gershfeld v. Teamviewer US*,
18   No. SACV 21-00058-CJC(ADSx), 2021 WL 3046775 (C.D. Cal. June 24, 2021)............... 21

19   *Gilmore v. Wells Fargo Bank N.A.*,
     75 F. Supp. 3d 1255 (N.D. Cal. 2014) ........................................................................... 25

20
     *Gonzales v. Nat. Factors Nutritional Prods. Inc.*,
21   No. 2:24-CV-02584-DSF-AS, 2024 WL 4609853 (C.D. Cal. June 28, 2024) ...................... 10

22   *Granfield v. NVIDIA Corp.*,
     No. C 11-05403 JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012)...................................... 10

23
     *Hadley v. Kellogg Sales Co.*,
24   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ............................................................................ 9, 22

25   *Hall v. Time, Inc.*,
     No. SACV 19-01153-CJC, 2020 WL 2303088 (C.D. Cal. Mar. 13, 2020), *aff'd*, 857 F.
26   App'x 385 (9th Cir. 2021)................................................................................................ *passim*

27   *Herskowitz v. Apple Inc.*,
     940 F. Supp. 2d 1131 (N.D. Cal. 2013) ...................................................................... 8, 9, 10

28

*Hodson v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) ................................................................................. 23

*In re Apple & AT&T iPad Unlimited Data Plan Litig.*,
   802 F. Supp. 2d 1070 (N.D. Cal. 2011) ................................................................ 25

*In re Arris Cable Modem Consumer Litig.*,
   No. 17-CV-01834-LHK, 2018 WL 288085 (N.D. Cal. Jan. 4, 2018) ............ 13, 14, 25

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................. 9, 12

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (2011) ......................................................................................... 12

*Lanovaz v. Twinings N. Am., Inc.*,
   No. C-12-02646-RMW, 2013 WL 675929 (N.D. Cal. Feb. 25, 2013) .................. 12

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ..................................................................... 19, 20

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
   416 F.3d 940 (9th Cir. 2005) ................................................................................ 25

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................... 9

*Martinez v. Newsom*,
   46 F.4th 965 (9th Cir. 2022) ................................................................................. 10

*Phillips v. Apple Inc.*,
   No. 15-CV-04879-LHK, 2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ......... 13, 14

*Porras v. StubHub, Inc.*,
   No. C 12-1225 MMC, 2012 WL 3835073 (N.D. Cal. Sep. 4, 2012) ..................... 23

*Roffman v. Perfect Bar, LLC*,
   No. 22-cv-02479-JSC, 2022 WL 4021714 (N.D. Cal. Sept. 2, 2022) (Corley, J.) ............... 13

*Rojas-Lozano v. Google, Inc.*,
   159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...................................................... 13, 24, 25

*Rutter v. Apple Inc.*,
   No. 21-cv-04077-HSG, 2022 WL 1443336 (N.D. Cal. May 6, 2022) ................. 9, 16

*Sanchez v. Nurture, Inc.*,
   626 F. Supp. 3d 1107 (N.D. Cal. 2022) ............................................................ 10, 12

*Tabler v. Panera LLC*,
   No. 19-CV-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) ............... 10

*Turnier v. Bed Bath & Beyond Inc.*,
   517 F. Supp. 3d 1132 (S.D. Cal. 2021) ................................................................ 18

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) .................................................................... 9, 12

*Viveros v. Audible, Inc.*,
  No. C23-0925JLR, 2023 WL 6960281 (W.D. Wash. Oct. 20, 2023) ............................ *passim*

*Walkingeagle v. Google LLC*,
  No. 3:22-cv-00763-MO, 2023 WL 3981334 (D. Or. June 12, 2023), *aff'd*, 2024 WL
  4379734 (9th Cir. Oct. 3, 2024) .............................................................. 17, 20, 21

*Warth v. Seldin*,
  422 U.S. 490 (1975) ........................................................................................ 10

*Williamson v. McAfee, Inc.*,
  No. 5:14-CV-00158-EJD, 2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) .......................... 24

*Wilson v. Century 21 Great W. Realty*,
  15 Cal. App. 4th 298 (1993) .............................................................................. 25

*Wilson v. Frito-Lay N. Am., Inc.*,
  961 F. Supp. 2d 1134 (N.D. Cal. 2013) ................................................................ 10

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) ....................................................................... 19

*Yastrab v. Apple Inc.*,
  No. 5:14-CV-01974-EJD, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) .......................... 9

*Zeichner v. Nord Sec. Inc.*,
  No. 24-cv-02462-JSC, 2024 WL 4951261 (N.D. Cal. Dec. 2, 2024) (Corley, J.) ................ 25

*Zeller v. Optavia, LLC*,
  No. 22-cv-434-DMS-MSB, 2022 WL 17858032 (S.D. Cal. Dec. 22, 2022) ............. 12, 22, 24

**STATUTES**

Cal. Bus. & Prof. Code § 17204 ........................................................................... 12

Cal. Bus. & Prof. Code § 17500 ........................................................................... 23

Cal. Bus. & Prof. Code § 17535 ........................................................................... 12

Cal. Bus. & Prof. Code §§ 17600, *et seq.* ............................................................. 18

Cal. Bus. & Prof. Code § 17601(b) ....................................................................... 15

Cal. Bus. & Prof. Code § 17601(c) .................................................................. 14, 16

Cal. Bus. & Prof. Code § 17602(a) .................................................................. *passim*

Cal. Bus. & Prof. Code § 17602(c) .................................................................. 14, 21

Cal. Bus. & Prof. Code §17602(d) .................................................................. 14, 21

Cal. Civ. Code § 1761 ....................................................................................... 24

Cal. Civ. Code § 1770(a) ................................................................................................. 23, 24

**RULES**

Fed. R. Civ. P. 8 .................................................................................................................. 9, 10

Fed. R. Civ. P. 9(b) ............................................................................................................ *passim*

Fed. R. Civ. P. 12(b)(1) ...................................................................................................... 1, 8

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1, 9

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 13, 2025, at 10:00 a.m., or as soon as available, in the courtroom of the Honorable Jacqueline Scott Corley, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant Adobe Inc. will and hereby does move the Court for an order dismissing, under Federal Rule of Civil Procedure 12(b)(1) for lack of standing, all of Plaintiff's causes of actions concerning subscriptions he did not purchase or use; and dismissing, under Federal Rule of Civil Procedure 12(b)(6) for failure to plead facts sufficient to state a claim upon which relief may be granted, Plaintiff's first cause of action for Unfair Competition, second cause of action for Conversion, third cause of action under California's False Advertising Law, fourth cause of action for alleged violation of California's Consumer Legal Remedies Act, fifth cause of action for Unjust Enrichment/Restitution, sixth cause of action for Negligent Misrepresentation, and seventh cause of action for Fraud.

This Motion is based on this Notice of Motion; Adobe's Memorandum of Points and Authorities; the concurrently filed Declaration of Jedediah Wakefield, and any exhibits attached thereto; the papers on file; any Reply which Adobe may file in support of this Motion; and any evidence and argument presented to the Court.

Dated: December 17, 2024      FENWICK & WEST LLP

By: */s/ Jedediah Wakefield*
    Jedediah Wakefield
    Tyler G. Newby
    Molly R. Melcher
    Brian Buckley (*pro hac vice*)
    Y. Monica Chan (*pro hac vice*)

    Attorneys for Defendant Adobe Inc.

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3       Adobe makes its popular creative tools available to customers through online customer-

4   friendly subscription practices that allow for lower prices and more flexible terms.  As shown by

5   the "example" screenshots in Plaintiff's First Amended Complaint ("FAC"), Adobe clearly and

6   conspicuously discloses the subscription terms during the enrollment process *before* checkout.

7   Among its myriad disclosures, Adobe discloses the terms of the subscription, the cost, and how

8   customers can cancel their free trial or subscription if and when they choose.  Although it is not

9   legally required, Adobe also tells customers when their free trial ends (if applicable).  Further,

10  Adobe gives customers a 14-day grace period after billing begins to cancel their subscription for a

11  full refund (with no cancellation fee) and also tells customers when that grace period ends.  Only

12  after a customer clicks "Agree and subscribe" to these disclosures can they proceed with the

13  subscription.  As the FAC also shows, Adobe sends customers acknowledgement emails with

14  detailed disclosures after checkout, reminding them of the subscription terms and cancellation

15  policy.  Adobe also offers several easy-to-use cancellation options, including an online process.  In

16  fact, Plaintiff admits that he "[f]ollow[ed] the necessary steps to effectuate cancellation through his

17  online Adobe account"—just as Adobe instructs customers to do—and "successfully canceled" his

18  subscription at a convenient time for him.  FAC ¶ 9.

19      Despite Adobe's customer-friendly subscription practices, Plaintiff claims he was somehow

20  misled into paying for an Adobe subscription, Creative Cloud All Apps.  The FAC alleges that

21  Adobe's disclosures regarding its subscriptions fail to comply with California's Automatic

22  Renewal Law ("ARL"), and on that basis, Plaintiff contends that Adobe also is liable under various

23  common-law and consumer-protection theories.  Plaintiff alleges that Adobe misrepresents and

24  fails to clearly and conspicuously disclose the auto-renewal terms.  He claims that Adobe's

25  acknowledgement emails are similarly misleading, and that Adobe "traps" customers by making it

26  "exceedingly difficult" to cancel their subscriptions.  But the facts and "example" screenshots

27  alleged in the FAC defeat Plaintiff's dramatic claims, which all fail as a matter of law.

28

As a threshold matter, Plaintiff purchased only Adobe's Creative Cloud All Apps subscription, but he seeks to represent consumers who purchased *13 other Adobe subscriptions*, regardless of whether they started with a free trial (like Plaintiff) or chose a straight-to-paid subscription (unlike Plaintiff). Plaintiff plainly lacks standing to assert claims for subscriptions he never used. Similarly, Plaintiff lacks statutory standing to assert claims under California's False Advertising Law ("FAL"), Consumer Legal Remedies Act ("CLRA"), and Unfair Competition Law ("UCL"). Plaintiff is conspicuously silent about his personal experience with Adobe's subscriptions, alleging nothing about what he actually saw, read, or relied on before or after he enrolled in his subscription. As such, Plaintiff fails to allege that he relied to his detriment on *any* Adobe statement or representation. Nor can he claim injury from Adobe's cancellation process, as he admittedly cancelled without difficulty.

Beyond standing, Plaintiff has not adequately alleged any violation of the ARL, or any CLRA, FAL, or UCL claims predicated on ARL violations. All of those claims sound in fraud and are subject to Rule 9(b)'s heightened pleading standard, but Plaintiff does not allege what Adobe allegedly misrepresented or omitted. And Plaintiff's common-law claims for conversion, unjust enrichment/restitution, negligent misrepresentation, and fraud all fail as merely duplicative of the flawed ARL-predicated claims. The Court should dismiss the FAC in its entirety with prejudice.

## II.    STATEMENT OF FACTS

### A.    Adobe And The Adobe Subscriptions

Adobe "is a leading industry computer software developer" and offers its popular software to customers on a subscription basis. FAC ¶¶ 1-2. Subscription to Adobe's Creative Cloud All Apps gives customers broad access to Adobe's popular, flagship software, including (among others) Adobe Acrobat Pro, Photoshop, and more. *Id.* ¶ 2, nn.1-14. Adobe also offers standalone subscriptions to each software offering. *Id.* For certain subscriptions, such as Creative Cloud All Apps, Adobe offers three pricing plans: "Monthly," "Annual, prepaid," and "Annual, paid monthly." *Id.* ¶ 41. As reflected in the complaint, each plan type has a different pricing structure:

- <u>Monthly</u>: The "Monthly" plan is an undiscounted month-to-month contract without annual commitment, which customers can cancel anytime for no fee. *Id.* nn.1, 51.

- • <u>Annual, prepaid:</u> The "Annual, Prepaid" plan requires an annual commitment and pre-payment of the entire contract price upfront, but it gives customers the largest discount from the "Monthly" plan. *Id.* n.1.

- • <u>Annual, paid monthly:</u> The "Annual, paid monthly" is a hybrid option that offers customers nearly the same discount as the "Annual, prepaid" plan, but customers pay for their annual commitment in monthly installments. *Id.*

Despite the annual commitment, customers can still cancel the "Annual, paid monthly" plan anytime during the first year by paying a fee of 50 percent of the remaining monthly installments, as Adobe discloses in the Subscription and Cancellation Terms.   Declaration of Jedediah Wakefield, Ex. A at 2; FAC ¶ 54.  Plaintiff relies on and extensively quotes from the Subscription and Cancellation Terms, which are therefore incorporated by reference into the FAC. *Gershfeld v. TeamViewer US, Inc.*, No. 21-55753, 2023 WL 334015, at *1 (9th Cir. Jan. 20, 2023).

Adobe offers customers the option to try certain subscriptions, like Creative Cloud All Apps, for free during a trial period.  FAC ¶ 44.  Customers can cancel before the free trial ends to avoid being charged for the subscription. *See, e.g.*, *id.* ¶¶ 45, 48.  Customers can also purchase an Adobe subscription "straight-to-paid," meaning there is no free trial. *Id.* ¶¶ 5, 62.

## B.    Plaintiff And His Claims

Plaintiff Vikram Singh, a California resident, allegedly enrolled in a free trial of a "Creative Cloud All Apps 100GB" in June 2022.  FAC ¶ 9.  According to Plaintiff, once the trial ended, "Adobe automatically charged him a subscription fee of $29.99 plus tax." *Id.*  Plaintiff claims he noticed the charges, wanted to cancel, and was able to "[f]ollow[] the necessary steps to effectuate cancellation through his online Adobe account." *Id.*  Plaintiff claims that because he had an "Annual, paid monthly" plan, he would have owed an "outstanding balance for the remainder of his yearly subscription term" if he had cancelled at that time. *Id.*  Although he could have cancelled then, Plaintiff "opted to proceed with his Adobe Subscription." *Id.*  In May 2023, Plaintiff "successfully canceled his yearly Adobe Subscription," by paying a fee of $15.00 plus tax. *Id.*

While the FAC contains generalized "example[s]" of statements from Adobe's online enrollment process allegedly captured on or around June 20, 2024—two years *after* Plaintiff

enrolled in a Creative Cloud All Apps free trial—Plaintiff does not allege that he ever saw those statements, or *any* statements from Adobe for that matter. *See, e.g.*, *id.* ¶¶ 42, 48. In fact, Plaintiff alleges nothing about what he read, understood, or believed during *his* enrollment process in June 2022. *See id.* ¶ 9. Plaintiff admits that Adobe sent him an acknowledgement email following his enrollment, although he does not allege that he read it. *Id.* ¶¶ 9, 60. Plaintiff also says nothing about what he encountered during his successful cancellation process. *Id.* ¶ 9.

### C.    Adobe's Automatic Renewal Disclosures

Plaintiff alleges that Adobe fails to adequately present its auto-renewal terms and obtain customers' consent to subscriptions. But the FAC reveals otherwise. The FAC incorporates "example" screenshots of the enrollment process for a Creative Cloud All Apps free trial as of June 2024. FAC ¶¶ 44, 45, 48, 61, 62. Plaintiff does not allege that these screenshots are similar to what *he* saw when he enrolled in the Creative Cloud All Apps free trial, although he claims (without support) that the enrollment process for all Adobe subscriptions is "similar." *Id.* ¶¶ 41, 44, 49, 62. The screenshots all show the enrollment process for a "free trial." *Id.* ¶¶ 44-45, 48. (Plaintiff offers nothing showing the enrollment process for a straight-to-paid subscription.)

According to Plaintiff, clicking the "Free trial" button on Adobe's website opens a lightbox titled "**Try the full version of Adobe apps with a 7-day free trial**," prompting the customer to choose one of the three payment plans:



1    FAC ¶ 45.  Once the customer selects a plan and clicks the "Continue" button, the customer is

2    prompted to input certain information and directed to the last step of the process, the checkout page.

3    *Id.* ¶ 47.  The FAC shows screenshots of the checkout page "for a 'Yearly billed monthly' Creative

4    Cloud All Apps on a free trial basis."  *Id.* ¶ 48.  Plaintiff alleges that "[i]f a consumer chooses to

5    scroll down, the Checkout Page's design changes in appearance," with Adobe's auto-renewal terms

6    disclosure changing from a horizontal orientation to draw the customer's attention.



16        Adobe clearly discloses, in bold font, that "**[a]fter your trial ends, you will be charged**

17    **US$59.00 (plus tax) monthly.  At the end of your one-year term, your subscription will**

18    **automatically renew monthly until you cancel (price subject to change).  Cancel before your**

19    **trial ends and you won't be charged.  Not annual commitment required after the first year.**

20    **Cancel anytime via Adobe Account or Customer Support**."  FAC ¶ 48.  Adobe's disclosure is

21    spatially separated from the order summary panel and credit card input form on the rest of the page,

22    so it stands out starkly from other text.  *Id.*  The disclosure also appears immediately above the

23    "Agree and subscribe" call-to-action button, which the customer must click to proceed with the

24    subscription.  *Id.*  The customer is notified that by clicking the button, they agree to Adobe's

25    disclosure, as well as the "Terms of Use and the Subscription and Cancellation Terms."  *Id.*

26    "Subscription and Cancellation Terms" is in blue to signify a hyperlink.  If a customer clicks on

27    that link, a window pops up with the Subscription and Cancellation Terms, where Adobe discloses

28

that if consumers "'cancel after 14 days, [they will] be charged a lump sum amount of 50% of [their] remaining contract obligation[.]'"  *Id.* ¶ 54, n.52; *see also* Wakefield Ex. A at 2.

In addition to the auto-renewal term disclosure, Adobe provides further information under the bold "**Free trial terms**" section on the panel on the right side of the checkout page.  FAC ¶ 48.  Adobe discloses that "[b]illing automatically starts after free trial ends," and "[c]ancel before [date] to avoid getting billed."  *Id.*  Adobe also states in bold that "**[a]fter trial ends, on [date]**" the customer will be charged "**US$59.99/mo**."  *Id.*  These disclosures make clear to customers that unless they cancel first, they will be charged a subscription fee once their free trial ends.

### D.    Adobe's Acknowledgement Email

Plaintiff alleges that Adobe's post-checkout acknowledgement email does not comply with the ARL, again relying on "example" screenshots of acknowledgment emails from June 2024 for Creative Cloud All Apps, both free trial and straight-to-paid.  FAC ¶¶ 61-62.  Plaintiff claims that these emails are "substantively and materially identical or substantially the same in terms of layout, organization, and most importantly, text" to what Adobe sent Plaintiff.  *Id.* ¶ 63.  Plaintiff does not explain why he failed to submit the acknowledgement email *he* received.

In all events, Adobe titles the acknowledgement email replicated in the FAC: "**welcome to your free trial of Creative Cloud All Apps 100GB!**"  In the first full paragraph, Adobe states in bold: "**After the free trial ends on June 27, 2024, you will be charged US$59.99 (plus tax) monthly.  At the end of your one-year term, your subscription will automatically renew monthly until you cancel (price subject to change).  Cancel before your free trial ends and you won't be charged. No annual commitment required after the first year. Cancel anytime via Adobe Account or Customer Support.**"  *Id.* ¶ 61.  The acknowledgment provides additional information regarding the subscription and cancellation terms, repeatedly directing customers to the hyperlinked "Adobe Account" and "Customer Support" to cancel their trial and/or subscription.

The acknowledgement email for the straight-to-paid subscription is titled, "**Thanks for your purchase.**"  Adobe also discloses upfront and in bold: "**You will be charged US$89.98 (plus tax) monthly.  At the end of your one-year term, your subscription will automatically renew monthly until you cancel (price subject to change).  No annual commitment required after**

1  **the first year. Cancel anytime via Adobe Account or Customer Support**."  FAC ¶ 62.

2  Customers are repeatedly directed to the hyperlinked "Adobe Account" and "Customer Support"

3  to cancel their subscription.  *Id.*  In short, Adobe's acknowledgement emails clearly and

4  conspicuously reiterate Adobe's auto-renewal terms and how to cancel.

5          **E.**        **Cancellation**

6        Plaintiff alleges no facts about the cancellation process for any Adobe subscription, only

7  that he "successfully canceled his yearly Adobe Subscription" when he wanted to.  FAC ¶ 9.  The

8  FAC includes no screenshot or descriptions of Adobe's cancellation process.  Nonetheless, Plaintiff

9  claims that Adobe "makes it exceedingly difficult and unnecessarily confusing for consumers to

10  cancel their Adobe Subscriptions."  *Id.* ¶¶ 51, 65, 86.

11  **III.**    **STATEMENT OF THE ISSUES TO BE DECIDED**

12        1.      Whether Plaintiff lacks standing to pursue any claim related to the unpurchased

13  subscriptions and straight-to-paid subscriptions, which he never used.

14        2.      Whether Plaintiff lacks standing to pursue any claim related to alleged difficulty

15  cancelling Adobe subscriptions, because he admittedly cancelled his subscription without issue

16  when he chose to do so.

17        3.      Whether Plaintiff lacks statutory standing to pursue the CLRA, UCL, and FAL

18  claims because the FAC does not allege that Plaintiff read, viewed, or relied on any statement by

19  Adobe and instead, alleges that he successfully cancelled his Adobe subscription without incident.

20        4.      Whether the FAC fails to state a claim as to the seven causes of action predicated

21  upon alleged misrepresentations or omissions in violation of the ARL, when Adobe clearly and

22  conspicuously disclosed the terms of the subscription, obtained affirmative consent to those terms,

23  provided an acknowledgement of those terms, and offered an easy means to cancel the subscription.

24  **IV.**    **ANALYSIS**

25        A motion to dismiss under Rule 12(b)(1) tests whether a court has subject matter

26  jurisdiction.  Once a party moves to dismiss for lack of subject matter jurisdiction, "the opposing

27  party bears the burden of establishing the court's jurisdiction."  *Herskowitz v. Apple Inc.*, 940 F.

28  Supp. 2d 1131, 1138 (N.D. Cal. 2013).

1    To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege facts sufficient to

2    state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007);

3    *see also* Fed. R. Civ. P. 8.  Moreover, "'[t]hreadbare recitals of the elements of a cause of action,

4    supported by mere conclusory statements," and "[m]ere 'conclusory allegations of law and

5    unwarranted inferences'" do not suffice to state a claim.  *Yastrab v. Apple Inc.*, No. 5:14-CV-01974-

6    EJD, 2015 WL 1307163, at *2 (N.D. Cal. Mar. 23, 2015) (citation omitted); *Herskowitz*, 940 F.

7    Supp. at 1137 (citation omitted).

8    Claims based on alleged fraud must meet Rule 9(b)'s heighted pleading standard, including

9    "the who, what, when, where, and how" of the alleged misconduct.  *Vess v. Ciba-Geigy Corp. USA*,

10   317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted); *see* Fed. R. Civ. P. 9(b).  Rule 9(b) applies

11   to all claims that sound in fraud, such as CLRA, UCL, and FAL claims that are explicitly or

12   implicitly premised on a fraud theory.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th

13   Cir. 2009) (holding CLRA and UCL claims to Rule 9's heightened pleading standard); *Rutter v.

14   Apple Inc*., No. 21-cv-04077-HSG, 2022 WL 1443336, at *8-9 (N.D. Cal. May 6, 2022) (applying

15   Rule 9(b)'s heightened pleading standard to UCL, FAL, and CLRA claims); *Hadley v. Kellogg

16   Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (applying Rule 9(b) requirements to CLRA

17   and UCL claims based on allegedly deceptive product labeling).

18   **A.      Plaintiff Lacks Article III Standing To Pursue Claims For Unpurchased
19            Subscriptions And Straight-To-Paid Subscriptions.**

20   Plaintiff alleges that he purchased the Creative Cloud All Apps subscription, but none of

21   Adobe's other subscription offerings ("Unpurchased Subscriptions").  FAC ¶ 9.  Plaintiff also

22   alleges that he enrolled through a free trial but does not allege that he has ever enrolled in a straight-

23   to-paid Adobe subscription.  *Id.*  Plaintiff lacks Article III standing to assert claims for the

24   Unpurchased Subscriptions and all subscriptions purchased through the straight-to-paid process.

25   Article III requires allegations that a plaintiff suffered a concrete and particularized injury

26   in fact.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  A plaintiff who seeks to serve as

27   a class representative must allege, and ultimately prove, that he personally has been injured, "not

28   that injury has been suffered by other, unidentified members of the class to which they belong and

which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *see also Martinez v. Newsom*, 46 F.4th 965, 970 (9th Cir. 2022) (citation omitted). Plaintiff bears the burden to establish standing. *See, e.g.*, *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 1140 (N.D. Cal. 2013). Courts in this District have held that claims relating to unpurchased products must be dismissed for lack of standing. *Granfield v. NVIDIA Corp.*, No. C 11-05403 JW, 2012 WL 2847575, at *6 (N.D. Cal. July 11, 2012) (striking allegations relating to product models that the plaintiff did not purchase or use for lack of injury); *Herskowitz*, 940 F. Supp. 2d at 1150 (granting motion to dismiss for lack of standing as to unpurchased products).

Plaintiff does not allege that he ever saw any ads, statements, or disclosures relating to the Unpurchased Subscriptions. Nor does he allege that he subscribed to or used the Unpurchased Subscriptions or was charged for those services. Plaintiff also alleges no experience whatsoever with a straight-to-paid subscription. All claims stemming from the Unpurchased Subscriptions and straight-to-paid subscriptions should be dismissed on this basis alone.

Plaintiff makes a conclusory claim that the enrollment process and acknowledgement emails for all Adobe subscriptions are "similar" across the board. FAC ¶¶ 41, 44, 49, 62. But boilerplate claims that products are "substantially similar" are insufficient. "To meet the plausibility standard of Rule 8, Plaintiffs have to say more, especially when they are asserting standing as to Products they did not purchase—otherwise their pleadings amount to unacceptably bare legal conclusions." *Wilson*, 961 F. Supp. 2d at 1142; *see also Gonzales v. Nat. Factors Nutritional Prods. Inc.*, No. 2:24-CV-02584-DSF-AS, 2024 WL 4609853, at *5 (C.D. Cal. June 28, 2024) (dismissing claims for unpurchased products absent factual allegations "to support the assertion that these products are substantially similar."). Products are substantially similar only if "the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1116 (N.D. Cal. 2022). "When a complaint fails to adequately allege how products a plaintiff purchased are in fact substantially similar to products that the plaintiff challenges, the Court must dismiss the complaint to the extent it seeks to bring claims on the basis of unpurchased products." *Tabler v. Panera LLC*, No. 19-CV-01646-LHK, 2019 WL 5579529, at *10 (N.D. Cal. Oct. 29, 2019).

Plaintiff says *nothing* about the enrollment processes and acknowledgement emails for the Unpurchased Subscriptions, nor does he explain how they are "similar" to those for Creative Cloud All Apps. To the contrary, the FAC shows that there are differences across the subscriptions that would alter the enrollment flow and disclosures that a customer encounters. Some subscriptions (e.g., Creative Cloud All Apps) offer customers all three payment plan options, whereas several others (e.g., Lightroom, Photoshop, Adobe Express, and Adobe Firefly) offer customers the option between "Annual, prepaid" and "Annual, billed monthly" only. FAC nn.3, 8, 13, 14. Customers can also enroll on a straight-to-paid basis or a free trial-to-paid basis. *See id.* ¶ 43.

Relatedly, the FAC reveals differences between free trial-to-paid and straight-to-paid subscriptions. During the enrollment process, the words "free trial" or "trial" appear roughly 10 times in the lightbox and the checkout pages alone (*see* FAC ¶¶ 45, 48); none of that language would apply when a customer enrolls in a straight-to-paid subscription. The disclosures in the acknowledgment emails are also different between free trial-to-paid versus straight-to-paid. *Id.* ¶¶ 61-62. For example, the acknowledgment for the straight-to-paid subscription includes a "**[c]ancellation details**" section, below the "DUE NOW" total, that contains additional information absent from the free trial acknowledgment email. *See id.* Several of Plaintiff's theories—for instance, that Adobe's disclosures are unclear on "when, exactly [consumers] must cancel their 'trial'" and the checkout pages fail to disclose when customers' "respective 'trial ends'" (*id.* ¶¶ 53, 56)—are obviously inapplicable to straight-to-paid subscriptions.

Plaintiff's allegation that all "Adobe Subscriptions" (as he broadly defines them) are "substantially similar" is a conclusory and unsubstantiated conclusion that the Court need not and should not credit. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

### B.    Plaintiff Fails To State Any Viable Claims.

Plaintiff's claims are all subject to Rule 9(b)'s heightened pleading standard. According to Plaintiff, Adobe "made the deliberate decision" to charge recurring fees and "intended to deceive Plaintiff and the Class" by using a purported "artifice devised and employed by Defendant to lure and deceive millions of consumers." FAC ¶¶ 3, 29, 116; *see also, e.g.*, *id.* ¶ 20 (alleging that Adobe

"intentionally confus[ed] users with the design and flow of their Website and Apps"), ¶ 106 (alleging that Adobe "intentionally made or disseminated [] untrue or misleading statements and material omissions to consumers"), ¶ 137 (alleging that the "misrepresentations and omissions were made by Defendant with knowledge of their falsehood").  Because Plaintiff alleges a deceptive scheme sounding in fraud, his claims must be pled with factual specificity as required by Rule 9(b).  *See, e.g.*, *Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL.") (citation omitted); *Vess*, 317 F.3d at 1103-04; *Zeller v. Optavia, LLC*, No. 22-cv-434-DMS-MSB, 2022 WL 17858032, at *12 (S.D. Cal. Dec. 22, 2022).  All of Plaintiff's claims fall far short of meeting that heightened pleading standard.

### 1.    Plaintiff Pleads No Viable UCL, CLRA, Or FAL Claims.

#### a.    Plaintiff Lacks Statutory Standing.

Plaintiff's UCL, FAL, and CLRA claims all fail at the start for lack of statutory standing. To establish standing under these statutes, a plaintiff must show he suffered an injury in fact and lost money or property as a result of a defendant's challenged conduct.  Cal. Bus. & Prof. Code §§ 17204, 17535; *see Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326 (2011).  Plaintiff has no standing to assert claims for the Unpurchased Subscriptions because he cannot plausibly allege that he lost any money or property from them.  *Supra* § V.A.  It is axiomatic that Plaintiff "cannot expand the scope of his or her claims to include a product not purchased or advertisements not relied upon. … [t]he statutory standing requirements of the UCL and CLRA are narrowly prescribed and do not permit such generalized allegations."  *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929, at *2 (N.D. Cal. Feb. 25, 2013) (internal citation omitted); *see also Kwikset*, 51 Cal. 4th at 326; *Sanchez*, 626 F. Supp. 3d at 1116 (plaintiff lacked statutory standing for UCL, CLRA, and FAL claims as to unpurchased products).  Nor can Plaintiff establish standing to assert any cancellation claim.  He concedes that he "***successfully*** canceled his yearly Adobe Subscription" without incident.  FAC ¶ 9 (emphasis added).  That defeats any injury or causation.

Plaintiff also lacks statutory standing because he has not alleged actual reliance on *any* Adobe statement or omission regarding *any* Adobe subscription, purchased or not.  "[A] plaintiff

must allege actual reliance in order to have standing to pursue" UCL, FAL, and CLRA claims. *Roffman v. Perfect Bar*, LLC, No. 22-cv-02479-JSC, 2022 WL 4021714, at *5 (N.D. Cal. Sept. 2, 2022) (Corley, J.).  To meet this requirement, a plaintiff "must have seen the representations and taken action based on what [he] saw." *Phillips v. Apple Inc.*, No. 15-CV-04879-LHK, 2016 WL 1579693, at *7 (N.D. Cal. Apr. 19, 2016) (dismissing claims where "Plaintiffs do not allege that they saw or heard any statements, advertising, terms of use, or other representations by Apple before" downloading the software).  In *Rojas-Lozano v. Google, Inc.*, this Court dismissed the CLRA and UCL claims where the plaintiff "has not even alleged what representations she encountered, let alone that she relied upon them," and "even assuming she encountered one of the [example] prompts identified in the [complaint], she has not alleged that the omission of the challenged information in any way impacted her behavior." 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016); *see also Roffman*, 2022 WL 4021714, at *6 (dismissing claim under the CLRA, UCL, and FAL where the complaint "does not allege that Plaintiffs looked at or relied on the nutrition facts panel [at issue]").  Similarly, in *In re Arris Cable Modem Consumer Litig.*, the court dismissed the UCL, CLRA, and FAL claims because the plaintiffs failed to allege actual reliance.  No. 17-CV-01834-LHK, 2018 WL 288085, at *9 (N.D. Cal. Jan. 4, 2018) (plaintiffs "identify a range of statements … that [they] allege are misleading" and "generally allege that they relied on [defendant's] misrepresentations and omissions in purchasing the [product]," but plaintiffs never "specified which statements any of them saw or relied on in deciding to buy the [product]").

Here, Plaintiff is silent on his *personal* experience with the enrollment process, alleging only that he somehow "started a free trial of 'Creative Cloud All Apps 100GB'" and "[a]t the end of the free trial, Adobe automatically charged him a subscription fee of $29.99 plus tax." FAC ¶ 9. The FAC contains only years-after-the-fact screenshots and "example[s]" from June 2024 that purportedly show Adobe's misstatements. *Id.* ¶¶ 45, 48.  But there is no allegation that Plaintiff actually saw or was even aware of any "misstatements" before he purchased his subscription, let alone *which* one(s) he relied on.  The FAC vaguely alleges that Plaintiff and putative class members "reasonably relied on the conspicuous disclosures of Defendant's Checkout Page and Acknowledgment Email (and, as a natural corollary, the omissions and/or the inconspicuousness

of the disclosures contained therein)" (*id.* ¶ 68), but those are precisely the types of "conclusory" and "general[]" allegations that courts routinely deem too thin to confer statutory standing.  *See, e.g.*, *Phillips*, 2016 WL 1579693, at *8; *In re Arris*, 2018 WL 288085, at *7; *Charbonnet v. Omni Hotels & Resorts*, No. 20-cv-01777-CAB-DEB, 2020 WL 7385828, at *5 (S.D. Cal. Dec. 16, 2020) ("conclusory allegations" insufficient to plead "facts establishing that [plaintiff] actually relied on [defendant's] alleged 'omission'").  In sum, because Plaintiff fails to allege either injury or actual reliance, he cannot establish statutory standing to pursue his UCL, CLRA, and FAL claims.

### b.    Plaintiff Fails To Allege Any Predicate Violation Of The ARL.

Plaintiff's claims are also substantively defective.  As the predicate for his claims, Plaintiff alleges that Adobe violated the ARL by not (1) adequately disclosing Adobe's automatic renewal terms, (2) obtaining Plaintiff's consent to those terms, (3) sending proper acknowledgment of Plaintiff's subscription, and (4) providing an easy-to-use mechanism for cancellation.  FAC ¶¶ 6, 40 (alleging violation of ARL Sections 17602(a)(l)-(a)(3), (c), and (d)).  But Plaintiff has failed to plead any violations of these provisions.

### i.    *Adobe Adequately Disclosed Its Automatic Renewal Terms.*

Under ARL § 17602(a)(1), a business must "present the automatic renewal offer terms … in a clear and conspicuous manner before the subscription or purchasing agreement is fulfilled and in visual proximity … to the request for consent to the offer."  Section 17601(c) defines a "clear and conspicuous" disclosure, in part, as one that appears "in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from the surrounding text of the same size by symbols or other marks, in a manner that clearly calls attention to the language."  The FAC confirms that Adobe has satisfied the ARL.

Adobe discloses from the outset that charges apply after a free trial ends, as well as the amount of those charges.  FAC ¶ 45.  Upon clicking the "Free trial" button, the enrollment lightbox offers customers a selection of three subscription plans on the right-hand side, clearly stating at the top: "You won't be charged until after your free trial ends."  *Id*.  Adobe also discloses the included features and the recurring charges for a given plan on the left-hand side, stating in bold "**7-day free trial, then US$59.99/mo**," for instance, if the "Annual, paid monthly" plan is selected.  *Id*.  The

FAC makes much of the fact that the "Annual, paid monthly" option is preselected.  *Id.* ¶¶ 42, 44.  But there is nothing inherently deceptive or misleading about that, and consumers are always free to choose other plans, for which Adobe also clearly discloses the offer terms.  *Id.* ¶ 45 (disclosing in bold that an "Annual, prepaid" plan would cost "**US$659.88/yr**," and in italics that there would be "*[n]o refund if you cancel after 14 days*," and in bold that a "Monthly" plan would cost "**US$89.99/mo**," and in italics that customers could "*[c]ancel anytime, no fee*").

Adobe's final checkout page also complies fully with the ARL.  Adobe explains, directly above the call-to-action button, that "[b]y clicking 'Agree and subscribe', you agree" to Adobe's automatic renewal offer terms.  *Id.* ¶ 48.  If the customer selects the "Yearly, billed monthly" plan, for instance, Adobe discloses that:

> **After your trial ends, you will be charged US$59.99 (plus tax) monthly**.  **At the end of your one-year term, your subscription will automatically renew monthly until you cancel (price subject to change).  Cancel before your trial ends and you won't be charged.  No annual commitment required after the first year.  Cancel anytime via Adobe Account or Customer Support.**  Cancel before Jul 10, 2024 to get a full refund and avoid a fee.  You also agree to the Terms of Use and the Subscription and Cancellation Terms.

*Id.* ¶ 48, n.51.  This language makes clear that (1) "the subscription … will continue until the consumer cancels" ("your subscription will automatically renew monthly until you cancel"); (2) the "cancellation policy that applies to the offer" ("[c]ancel anytime via Adobe Account or Customer Support," along with a blue hyperlink to the "Subscription and Cancellation Terms"); (3) the "recurring charges that will be charged" and "that the amount of the charge may change ("you will be charged US$59.99" and "price subject to change" on renewal); (4) the "length of the automatic renewal term" ("one-year term," at the end of which "your subscription will automatically renew monthly until you cancel"), and (5) the "minimum purchase obligation, if any (no minimum purchase obligation, as customers can "[c]ancel before your trial ends and you won't be charged").  *Compare id.*, *with* Cal. Bus. & Prof. Code § 17601(b) (defining "[a]utomatic renewal offer terms").  And Adobe goes further than what is required under the ARL, informing the customer of the date by which they must cancel the subscription "to get a full refund and avoid a fee."  FAC ¶ 48.  Adobe has met all of the ARL's requirements.  Plaintiff's arguments to the contrary are unavailing.

1    *First*, Plaintiff claims that Adobe's presentation of the automatic renewal terms on the

2    checkout page was not "clear and conspicuous" because the language was "presented in minuscule,

3    grey font (8.5 point to be exact) without emphasis or distinction" and "considerably less

4    conspicuous by comparison" to the rest of the page.  FAC ¶ 52.  That is false.  Adobe discloses the

5    automatic renewal terms in **bold** "contrasting type" font and in the same black color as the rest of

6    the text on the page (other than hyperlinks, which are shown in blue).  *Id.* ¶ 48.  Adobe's automatic

7    renewal terms are immediately above and in visual proximity to the call-to-action button, while

8    demarcated and "set off from" the rest of the text on the page for emphasis.  *Id.*  Adobe further calls

9    attention to the disclosure by making it the only aspect of the checkout page that "changes in

10   appearance" when a customer "scroll[s] down."  *Id.*  Section 17601(c) is phrased in the disjunctive,

11   and Adobe's presentation of its automatic renewal terms easily satisfies multiple prongs of that

12   provision.  *See, e.g.*, *Rutter*, 2022 WL 1443336, at *6 (rejecting allegations that disclosure was not

13   conspicuous where the automatic renewal terms "are bolded and therefore in 'contrasting type, font,

14   or color to the surrounding text of the same size,' as required by § 17601(c)"); *Hall v. Time, Inc.*,

15   No. SACV 19-01153-CJC, 2020 WL 2303088, at *3 (C.D. Cal. Mar. 13, 2020), *aff'd*, 857 F. App'x

16   385 (9th Cir. 2021) (similar).

17   *Second*, Plaintiff manufactures "confusion" by arguing that "[c]ancel anytime" is "directly

18   contradicted by" other information presented during the enrollment process, including that the

19   customer must "[c]ancel before Jul 10, 2024 to get a full refund and avoid a fee."  FAC ¶¶ 53-54.

20   According to Plaintiff, because Adobe fails to "indicate when consumers' 'trial ends,'" Adobe's

21   disclosure could be interpreted to mean "that the paid subscription may be canceled 'anytime' while

22   the 'trial' must be canceled 'before Jul 10' to 'avoid a fee'."  *Id.*; *see also id.* ¶ 56.  This tortured

23   argument fails on several levels.  To start, the ARL does not require a business to disclose the date

24   when a trial ends, just a "clear and conspicuous explanation of the price that will be charged after

25   [it] ends" (which Adobe does).  Cal. Bus. & Prof. Code § 17602(a).

26   In all events, Adobe *does repeatedly* disclose the duration of the trial.  On the enrollment

27   lightbox page, Adobe twice discloses, in bold, that the trial is "a 7-day free trial."  FAC ¶ 45.  On

28   the checkout page, Adobe further discloses the total "DUE NOW" (zero, because of the free trial)

and the total due "[a]fter trial ends, on Jun 27, 2024" ("US$59.99/mo"). *Id.* ¶ 48. Adobe also sets forth the "**Free trial terms**," stating "[b]illing automatically starts after free trial ends" and "[c]ancel before Jun 27 to avoid getting billed." *Id.* No reasonable consumer would ignore all of that and believe that "Jul 10, 2024"—which is *twenty* days after the date of the screenshot, captured on or around June 20, 2024—refers to the date the 7-day free trial ends. *See Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (rejecting "inference [that] is unreasonable" when read "in the context of the entire document"). Instead, Adobe makes abundantly clear that after the 7-day free trial ends, a customer has a 14-day grace period—which ends on "Jul 10, 2024" in the example screenshot—by which to cancel the subscription, obtain "a full refund" of the amount billed (indeed, there would be nothing to refund for a free trial), and "avoid a fee." FAC ¶ 48. Thus, "[c]ancel anytime"—language that courts have deemed sufficient under the ARL—clearly and logically refers to the cancellation of the paid subscription. *See Viveros v. Audible, Inc.*, No. C23-0925JLR, 2023 WL 6960281, at *7 (W.D. Wash. Oct. 20, 2023); *Walkingeagle v. Google LLC*, No. 3:22-cv-00763-MO, 2023 WL 3981334, at *4 (D. Or. June 12, 2023), *aff'd*, 2024 WL 4379734 (9th Cir. Oct. 3, 2024) (same, interpreting nearly identical requirements under Oregon's ARL).

*Third*, Plaintiff complains that the checkout page fails to disclose the "cancellation policy that applies to the offer" because "a consumer would need to click on the blue 'Subscription and Cancellation Terms,'" hyperlinked from the automatic renewal terms, to learn more about the "refund" and "fee," if any, associated with the cancellation. FAC ¶¶ 54, 58. But several courts have already held that a business's disclosure is sufficient under the ARL where it "provide[s] information about how and when [the plaintiff] could cancel, with hyperlinks to the relevant contact information." *Hall*, 2020 WL 2303088, at *4. Here, Adobe's disclosure on the checkout page indisputably places customers on notice that they must cancel by a certain date to "get a full refund" and, for the "Yearly, billed monthly" plan, to "avoid a fee." FAC ¶ 48, n.51. Adobe also tells customers how they can cancel ("via Adobe Account or Customer Support") and when ("anytime") and includes a blue hyperlink to the "Subscription and Cancellation Terms" that, according to Plaintiff, include the complete cancellation terms. *Id.* This is sufficient under the ARL. *See Viveros*, 2023 WL 6960281, at *8 (finding that disclosures on the checkout page stating "[c]ancel

anytime" by visiting "Account Details," with a hyperlink to the terms, "satisfy the ARL's requirement that renewal offer terms clearly and conspicuously disclose the cancellation policy.").[1]

*Fourth*, Plaintiff claims that the checkout page fails to disclose "[t]he recurring charges that will be charged" to the customer because the "actual recurring monthly price charged" includes "the full membership fee *and an additional undisclosed amount in tax.*" FAC ¶ 55.  But as Plaintiff concedes, Adobe expressly states that the recurring amount comprises "US$59.99 (***plus tax***) monthly." *Id.* ¶ 48 (emphasis added).  The ARL also does not require a business to disclose in advance the precise applicable taxes (which can vary by state and over time).  *See Viveros*, 2023 WL 6960281, at *7 (disclosure that the "amount of each recurring monthly charge" consists of "$14.95 plus taxes" sufficient under the ARL).

*Finally*, Plaintiff claims that the checkout page fails to disclose the "length of the automatic renewal term" because it is "unclear when the Adobe Subscriptions commence," as Adobe "fails to clarify when their respective 'trial ends'" and "what the 'billing' period is." FAC ¶ 56.  This hodgepodge of grievances is meritless.  As explained above, it is clear from Plaintiff's screenshots (*id.* ¶¶ 45, 48) that Adobe repeatedly discloses the length of the trial (7 days) and when the trial ends (June 27 in that instance). *Supra* at 16.  Adobe also informs customers when the billing period begins ("[a]fter your trial ends, you will be charged" and "[b]illing automatically starts after free trial ends"), the frequency and amount of the recurring charge ("US$59.99 (plus tax) monthly" and "US$59.99/mo"), and the length of the subscription term ("one-year term," after which the subscription "will automatically renew monthly until you cancel").  FAC ¶ 48.  Plaintiff also complains that Adobe does not disclose the applicable "time zone [] used to determine each of the triggering deadlines" (*id.* ¶ 56), but nowhere does the ARL require businesses to disclose such minutiae. *See* Cal. Bus. & Prof. Code §§ 17600, *et seq.*  In sum, Adobe complies with each and every requirement of the ARL.  *See Hall*, 857 F. App'x at 386 (Ninth Circuit rejected plaintiff's

---

[1] The FAC references *Turnier v. Bed Bath & Beyond Inc.*, 517 F. Supp. 3d 1132 (S.D. Cal. 2021), to suggest that hyperlinking to Adobe's Subscription and Cancellation Terms is insufficient under the ARL. FAC n. 56.  *Turnier* is inapposite.  There, the defendant disclosed none of the automatic renewal terms required under the ARL "on the webpage that contains the request for consent"; instead, those terms were *only* accessible via a hyperlink. 517 F. Supp. 3d at 1139-40.  By contrast, Adobe makes the required disclosures directly on the request-for-consent page.  FAC ¶ 48.

1  efforts to expand the ARL's requirements, holding that "[plaintiff] cites no authority and offers no

2  reasoning for more stringent requirements than those required by the statute's text.").

3              ii.    *Adobe Obtained Consent To Its Automatic Renewal Terms.*

4              ARL Section 17602(a)(2) requires businesses to "first obtain[] the consumer's affirmative

5  consent" before charging the consumer's method of payment.  Here, Adobe obtained affirmative

6  consent from Plaintiff and other customers to its auto-renewal terms.  As Plaintiff concedes,

7  Adobe's checkout page contains an explicit "blue 'Agree and subscribe' checkout button at the

8  bottom of the [checkout] page (i.e., the 'request for consent')."  FAC ¶ 48.  To sign up for a

9  subscription, Plaintiff must click on this call-to-action button, or he cannot proceed.  *Id.*  The

10 disclosure directly above the button explains: "By clicking 'Agree and subscribe', you agree" to

11 Adobe's auto-renewal disclosure and "also agree to the Terms of Use and the Subscription and

12 Cancellation Terms."  *Id.*  That is all the ARL requires and is more than sufficient to establish

13 Plaintiff's consent for Adobe to charge for payment.  *See Viveros*, 2023 WL 6960281, at *8

14 (consumer affirmatively consent to the auto-renewal terms "when they visited the 'Check Out'

15 page, entered their billing information, and clicked the 'Try for $0.00' button'"); *Hall*, 2020 WL

16 2303088, at *1, 4 (plaintiff "affirmatively consented to the agreement containing [the auto-renewal]

17 terms by entering her payment information," clicking the "submit order" button "after receiving

18 notice of those terms"); *see also Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484-85 (9th Cir. 2020)

19 (consumer consented to terms by "click[ing] a 'Sign In' button, directly under which the following

20 language appeared: '*By clicking Sign In, you agree to the Turbo Terms of Use, TurboTax Terms of*

21 *Use, and have read and acknowledged our Privacy Statement*'"); *Lee v. Ticketmaster L.L.C.*, 817

22 F. App'x 393, 394-95 (9th Cir. 2020) (customer consented by "click[ing] the 'Place Order' button

23 when ordering tickets, where directly above the button, the website displayed the phrase, 'By

24 clicking 'Place Order,' you agree to our Terms of Use'"); *Wiseley v. Amazon.com, Inc.*, 709 F.

25 App'x 862, 863-64 (9th Cir. 2017) (customers consent to Amazon's terms whenever making a

26 purchase on Amazon's website because the terms are linked next to the call-to-action button).

27          Plaintiff argues that this still is not enough because Adobe does not "require consumers to

28 read or affirmatively agree to any terms of service associated with their Adobe Subscriptions, i.e.,

by requiring consumers to select or click a 'checkbox' next to the automatic renewal offer terms to complete the checkout process." FAC ¶¶ 50, 59. Neither the ARL nor Ninth Circuit precedent impose such requirements. *See* Cal. Bus. & Prof. Code § 17602(a)(2) (no requirement of checkbox or other mechanism to indicate affirmative consent separate from the ordering process); *see also, e.g.*, *Dohrmann*, 823 F. App'x at 484-85; *Ticketmaster*, 817 F. App'x at 394-95. To the contrary, courts have consistently held that "[a]ffirmative consent … does not [] require a separate checkbox indicating consent to the automatic renewal terms." *Viveros*, 2023 WL 6960281, at *8; *see also Walkingeagle*, 2024 WL 4379734, at *2 (Ninth Circuit interpreting nearly identical language in Oregon's ARL and rejecting that "customers must select a 'checkbox' or take some other 'additional act' to demonstrate affirmative consent," because "this requirement is found nowhere in the ARL," "[n]or is it anywhere in our caselaw"); *see Hall*, 857 F. App'x at 387.

### iii.    *Adobe Provided The Required Acknowledgment.*

ARL Section 17602(a)(3) requires a business to "provide an acknowledgment that includes the automatic renewal offer terms or continuous service offer terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." Plaintiff concedes that Adobe "sent to Plaintiff and the Class email follow-ups regarding their purchases (the 'Acknowledgment Email')." FAC ¶¶ 60-62. As shown by the FAC, Adobe's acknowledgment emails contain the required information under the ARL, including at the top of the email that the subscription "will automatically renew monthly until you cancel (price subject to change)"; a statement of the recurring charge of "US$59.99 (plus tax) monthly"; and the length of the subscription: "one-year term," at the end of which the subscription "will automatically renew monthly until you cancel." *Id.* ¶¶ 61-62. The bolded "**Cancellation Terms**" section of each email further explains the applicable cancellation policy, for instance: "If you cancel within 14 days of your initial order, you'll be fully refunded. Should you cancel after 14 days, you'll be charged a lump sum amount of 50% of your remaining contract obligation and your service will continue until the end of that month's billing period." *Id.* The emails also repeatedly tell the customer how they can cancel their trial and/or subscription, *i.e.*, by visiting "Adobe Account or Customer Support." *Id.* In response, Plaintiff cannot rely on conclusory recitation of the statutory

requirements. FAC ¶ 64.  That gambit fails for the reasons explained above and because it provides none of the detail required to satisfy Rule 9(b).  *Supra* § IV.B.1.b.i; *see also Iqbal*, 556 U.S. at 678.

Plaintiff next complains that the acknowledgment emails "fail to provide a toll-free telephone number or describe another cost-effective, timely, and easy-to-use mechanism for cancellation" in violation of ARL Section 17602(c).  FAC ¶ 65; *see* Cal. Bus. & Prof. Code § 17602(c).  But Adobe is not required to provide a "toll-free telephone number."  Adobe need only (and did) provide at least one "cost-effective, timely, and easy-to-use mechanism for cancellation," by allowing users to cancel anytime via the hyperlinks in the acknowledge emails.  *Id.* ¶¶ 61-62.  As other courts have held, this is sufficient under the ARL.  *See, e.g.*, *Gershfeld v. Teamviewer US*, No. SACV 21-00058-CJC(ADSx), 2021 WL 3046775, at *4 (C.D. Cal. June 24, 2021) (defendant satisfied Section 17602(a)(3) where the acknowledgement email "provided a link for Plaintiff to cancel his automatic renewal"); *Walkingeagle*, 2023 WL 3981334, at *5 (defendant satisfied the nearly-identical requirement under Oregon's ARL by "allowing users to cancel anytime by following the hyperlinks" in the acknowledge email).

### iv.    Adobe's Cancellation Process Complies with the ARL.

Finally, Adobe did not violate the ARL's cancellation requirements.  Under ARL Section 17602(d), consumers must be able to terminate the subscription online "without engaging any further steps that obstruct or delay the consumer's ability to terminate," through either (i) "[a] prominently located direct link or button which may be located within either a customer account or profile," or (ii) "an immediately accessible termination email formatted and provided by the business that a consumer can send to the business without additional information."

Plaintiff references Section 17602(d) in passing (*see, e.g.*, FAC ¶ 51) but alleges nothing about the cancellation process, nor any facts to support Plaintiff's naked claim that Adobe "makes it exceedingly difficult and unnecessarily confusing for consumers to cancel their Adobe Subscriptions."  *Id.* ¶¶ 51, 65, 86.  Any claim based on Section 17602(d) thus fails on arrival.  *See Walkingeagle*, 2024 WL 4379734, at *2 (plaintiffs "did not allege sufficient facts to demonstrate that YouTube's cancellation policy violated the ARL" where plaintiffs "do not allege that they followed the cancellation link provided by Google in the acknowledgement email," nor do they

"describe or provide screen captures of the YouTube profile settings page alleged to contain the cancellation mechanism"); *Viveros*, 2023 WL 6960281 at *9 (dismissing claim based on a violation of Section 17602(a)(3) "[b]ecause Plaintiffs' allegations concerning Audible's confirmation emails tender[ ] naked assertion[s] devoid of further factual enhancement") (alteration in original) (internal quotation and citation omitted). Tellingly, Plaintiff does not allege that *he* was unable to cancel or even had difficulty doing so. To the contrary, Plaintiff admits that he was able to "[f]ollow[] the necessary steps to effectuate cancellation through his online Adobe account," "chose not to" cancel at first, and later "*successfully* canceled his yearly Adobe Subscription by paying a lower Early Termination Fee, which by then amounted to $15.00 plus tax." FAC ¶ 9 (emphasis added). These admissions show that Adobe's cancellation process was so clear and easy to follow that Plaintiff knew precisely how and when to cancel his subscription to minimize the termination fee. This dooms any cancellation claim.

In sum, Plaintiff alleges no violation of the ARL, which also is fatal to his UCL, CLRA, and FAL claims to the extent they are predicated on the ARL. *Hadley*, 243 F. Supp. 3d at 1094 ("If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails.") (citation omitted); *Zeller*, 2022 WL 17858032, at *12-13 (same for CLRA claim); *Arnold v. Hearst Magazine Media, Inc.*, No. 19-cv-1969-WQH-MDD, 2020 WL 3469367, at *8 (S.D. Cal. June 25, 2020) (same for FAL claims).

### c.    Plaintiff's UCL, CLRA, And FAL Claims Independently Fail.

Stripped of their threadbare recitation of the statutes, Plaintiff's allegations in support of his UCL, CLRA, and FAL claims are entirely derivative of his allegations that Adobe violated the ARL. *See, e.g.*, FAC ¶ 107 (alleging violation of the FAL based on statements "before and after enrollment in Defendant's Adobe Subscriptions regarding the terms of payment for and cancellation of a consumer's automatic payments"), ¶¶ 116-117 (alleging violation of the CLRA because Adobe did not "fully and clearly disclose[] the terms associated with the Adobe Subscriptions"), ¶¶ 84-87 (alleging violation of the UCL based on Adobe's violation of the CLRA, which is itself premised on the ARL, and also Sections 17602(a) and (b) of the ARL). These claims fail as explained above (*supra* § IV.B.1.b) and for the additional reasons below.

*First*, Plaintiff states no misrepresentation claim under the FAL, CLRA, or UCL—or any claim for negligent misrepresentation (*infra* § IV.B.2)—because he must allege falsity, an essential element. Cal. Bus. & Prof. Code § 17500 (requiring a violation of the FAL to be "untrue or misleading"); Cal. Civ. Code §§ 1770(a)(5), (a)(9) (defining violations of the CLRA when goods are advertised to have characteristics "that they do not have" or when sold not "as advertised"). But Plaintiff identifies *not a single false statement or advertisement by Adobe*. Instead, he gestures vaguely at certain "representations or omissions deceiving that the Adobe Subscriptions have characteristics, uses, and/or benefits, which they do not," and unspecified "false and deceptive advertisements." FAC ¶¶ 106, 107, 111, 116. Far from pleading "the who, what, when, where, and how" of Adobe's alleged misconduct, Plaintiff's cursory allegations fail to give Adobe "fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555.

Any omission-based theory likewise fails because Plaintiff does not identify any omission "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Hodson v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018). The closest Plaintiff can muster is his allegations that Adobe failed to disclose that "'fee' [is] synonymous with liquidated damages in the amount of 50% of a consumer's remaining **yearly** payments" and that "a consumer may only cancel the 'Monthly' but not the 'Yearly, billed upfront' after the specified date." FAC ¶ 54. But, as Plaintiff concedes, Adobe *expressly discloses* this information, including in the hyperlinked Subscription and Cancellation Terms. *Id.* (acknowledging Adobe's disclosures for (i) the "Yearly, billed monthly" plan that "if consumers 'cancel after 14 days, [they will] be charged a lump sum amount of 50% of [their] remaining contract obligation" and (ii) for the "Yearly, billed upfront" plan, that "[s]hould [consumers] cancel after 14 days, [their] payment is non-refundable, and [their] service will continue until the end of your contracted term"); Wakefield Ex. A at 2, 7. Adobe subscribers like Plaintiff are on notice of and agree to the disclosures in the Subscription and Cancellation Terms. *See Porras v. StubHub, Inc.*, No. C 12-1225 MMC, 2012 WL 3835073, at *6 (N.D. Cal. Sep. 4, 2012) (dismissing UCL, FAL, CLRA, fraud, and negligent misrepresentation claims; no reasonable consumer is likely to be deceived given defendant's "express acknowledgment that the tickets might be invalid, available for purchasers to review on

[defendant's] website"); *supra* § IV.B.1.b.ii.  Moreover, nothing on the checkout page conflicts with the Subscription and Cancellation Terms.  Adobe expressly notifies "Yearly, billed monthly" subscribers that they must cancel by the deadline to "avoid a fee" and "Yearly, billed upfront" subscribers that they must cancel by the deadline to "get a full refund."  FAC ¶ 48, n.51.

*Second*, Plaintiff's CLRA claim and the dependent "unlawful" and "unfair" UCL prongs fail because Sections 1770(a)(5) and 1770(a)(9) of the CLRA require a misrepresentation or omission regarding *goods and services*, but a digital subscription is neither a good nor a service under the statute.  "Goods" means "tangible chattels bought or leased," and "[s]ervices" means "work, labor, and services for other than a commercial or business use."  Cal. Civ. Code §§ 1761(a)-(b).  Courts routinely hold that the CLRA does not apply to software and virtual currency.  *See, e.g.*, *Rojas-Lozano*, 159 F. Supp. 3d at 1115-17 (reciting cases holding that software is neither a good nor a service under the CLRA, and holding same); *Doe v. Epic Games, Inc.*, 435 F. Supp. 3d 1024, 1046 (N.D. Cal. 2020) (holding virtual currency is not actionable under the CLRA because it is not a "good or service" under the statute); *Williamson v. McAfee, Inc.*, No. 5:14-CV-00158-EJD, 2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014) (dismissing claim based on subscriptions to software because "the CLRA does not cover software licenses").  Thus, an Adobe software subscription is neither a good nor a service under the CLRA.

*Third*, as shown above, Plaintiff cannot show the essential elements of reliance, causation, and injury.  *See Zeller*, 2022 WL 17858032, at *9; *Debono v. Cerebral Inc.*, No. 22-cv-03378, 2023 WL 300141, at *2 (N.D. Cal. Jan. 18, 2023).  He does not allege that any purported deficiencies in Adobe's auto-renewal disclosures caused *him* any harm, as he never read, saw, or relied on any statement by Adobe.  Likewise, Plaintiff cannot show any injury caused by Adobe's cancellation process because he successfully cancelled when he wanted to.  FAC ¶ 9.

## 2.    Plaintiff's Remaining Common-Law Claims Also Fail.

Plaintiff's common-law claims for conversion, unjust enrichment, negligent misrepresentation, and fraud are duplicative of his ARL-predicated claims and fail for the same reasons.  *See, e.g.*, *Hall*, 2020 WL 2303088, at *5 ("[b]ecause Plaintiff fails to plausibly allege any ARL violations, the Court also finds that she fails to plausibly state a claim for theft or conversion");

*Debono*, 2023 WL 300141, at \*3 ("Because plaintiffs haven't stated a claim for relief under the UCL [] or CLRA, their unjust-enrichment claim also fails.")  Plaintiff's problems do not stop there.

      *First*, Plaintiff cannot assert an unjust enrichment/restitution claim "that [is] merely duplicative of statutory or tort claims."  *In re Apple & AT&T iPad Unlimited Data Plan Litig.*, 802 F. Supp. 2d 1070, 1077 (N.D. Cal. 2011).  Unjust enrichment is not a separate cause of action under California law, although courts construe such claims "as claims for quasi-contract seeking restitution."  *In re Arris*, 2018 WL 288085, at \*9.  Where a plaintiff "alleges his theory of restitution based on the same violations of the ARL that underlie his UCL claims"—as Plaintiff does here (*see* FAC ¶ 94)—"the cause of action for restitution under a quasi-contract theory is duplicative of the claim for restitution under California statutory law."  *Zeichner v. Nord Sec. Inc.*, No. 24-cv-02462-JSC, 2024 WL 4951261, at \*8 (N.D. Cal. Dec. 2, 2024) (collecting cases) (Corley, J.).

      *Second*, Plaintiff must, but cannot, plead his fraud and negligent misrepresentation claims with specificity.  *Gilmore v. Wells Fargo Bank N.A.*, 75 F. Supp. 3d 1255, 1270 (N.D. Cal. 2014) ("[N]egligent misrepresentation is a species of fraud, and, hence, must be plead in accordance with Rule 9(b).")  He also must allege an affirmative representation, *not* merely an omission, for negligent representation.  *Wilson v. Century 21 Great W. Realty*, 15 Cal. App. 4th 298, 306 (1993).  The Court should dismiss these claims because Plaintiff identifies *no* false statement by Adobe.

      **C.**    **Amendment Would Be Futile.**

      Plaintiff has already availed himself of a free opportunity to amend and cure his claims, but his claims remain irredeemably flawed as a matter of law.  Because the claims and Plaintiff's underlying theory cannot be cured by further allegations, the Court should dismiss with prejudice and deny leave to amend because it would be a futile exercise.  *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005) (a court need not provide leave to amend where "it is clear that the complaint could not be saved by any amendment"); *see also, e.g.*, *Rojas-Lozano*, 159 F. Supp. 3d at 1121 (dismissing claims with prejudice, including because "amendment of the CLRA claim would [] be futile given that reCAPTCHA is not a 'good' or 'service'").

**V.**    **CONCLUSION**

      Adobe respectfully requests that the Court dismiss the FAC in its entirety with prejudice.

1     Dated: December 17, 2024           FENWICK & WEST LLP

2

3                                        By: */s/ Jedediah Wakefield*

4                                        Jedediah Wakefield
                                         Tyler G. Newby
5                                        Molly R. Melcher
                                         Brian Buckley (*pro hac vice*)
6                                        Y. Monica Chan (*pro hac vice*)

7                                        Attorneys for Defendant Adobe Inc.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28